**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROLLER BEARING COMPANY OF AMERICA, INC., | Civil Action No.:  24-2041 |
| Plaintiff, | |
| v. | |
| SOLVE INDUSTRIAL MOTION GROUP LLC, | December 26, 2024 |
| Defendant. | |

## **COMPLAINT**

Roller Bearing Company of America, Inc. ("Plaintiff" or "RBC"), by and through its legal counsel, Wiggin and Dana LLP, and in support of the instant Complaint against Defendant, Solve Industrial Motion Group LLC ("Defendant" or "Solve"), does hereby allege as follows:

### **Preliminary Statement**

1.      This is an action seeking injunctive relief and money damages based on trademark infringement, unfair competition, and false advertising.

2.      Plaintiff is the owner of U.S. Registration No. 5,293,300 for 1600 Series® and on September 27, 2024, the United States Patent and Trademark Office ("USPTO") issued to Plaintiff a Notice of Incontestability with regard to this trademark.  A true and accurate copy of the USPTO trademark status report is appended hereto as **Exhibit A**.

3.      Plaintiff is the owner U.S. Registration No. 5,293,303 for 1621® and on September 17, 2024, the USPTO issued to Plaintiff a Notice of Incontestability with regard to

1

this trademark. A true and accurate copy of the USPTO trademark status report is appended hereto as **Exhibit B**.

4.    Plaintiff is the owner of U.S. Registration No. 5,293,302 for 1630® and on September 17, 2024, the USPTO issued to Plaintiff a Notice of Incontestability with regard to this trademark.  A true and accurate copy of the USPTO trademark status report is appended hereto as **Exhibit C**.

5.    Plaintiff is the owner of U.S. Registration No. 5,293,301 for 1635® and on September 17, 2024, the USPTO issued to Plaintiff a Notice of Incontestability with regard to this trademark.  A true and accurate copy of the USPTO trademark status report is appended hereto as **Exhibit D**.

6.    Plaintiff is the owner of U.S. Registration No. 5,293,304 for 1641® and on September 17, 2024, the USPTO issued to Plaintiff a Notice of Incontestability with regard to this trademark.  A true and accurate copy of the USPTO trademark status report is appended hereto as **Exhibit E**.

7.    Plaintiff is the owner of U.S. Registration No. 5,293,305 for 600 Series® and on September 27, 2024, the United States Patent and Trademark Office issued to Plaintiff a Notice of Incontestability with regard to this trademark.  A true and accurate copy of the USPTO trademark status report is appended hereto as **Exhibit F**.

8.    For decades, Plaintiff has used the forgoing distinct trademarks, 1600 Series®, 1621®, 1630®, 1635®, 1641® and 600 Series® (collectively "RBC Industrial Trademarks") to uniquely identify its products. As alleged herein, Defendant improperly uses, without consent or authorization, RBC Industrial Trademarks to brand its own products and to, thereby, unfairly profit from RBC's years of hard work to solidify its excellent reputation in the industrial

marketplace.  Defendant has continued the infringement despite receiving from Plaintiff multiple cease and desist letters.

9.      In addition to alleging trademark infringement, this action alleges that Defendant's website contains false and misleading advertisements touting Defendant's manufacturing process and products as superior to those of its competitors.

10.      Defendant makes at least two false statements.  First, Defendant claims that its "manufacturing process" allows it to "delive[r]" high volume parts "*5 times more quickly than others in the industry.*"  This claim by Defendant is false and lacks substantiation.  The Defendant's false advertisement is specific, can reasonably interpreted as a statement of objective fact, and is capable of being proven false - - especially where it compares the speed of its manufacturing process with that of its competitors, including Plaintiff.

11.      Defendant falsely advertises the speed of its manufacturing process.  The advertisement is false on its face, constituting a literal falsehood, or, alternatively, the advertisement implies a false message which rises to the level of a literal falsehood. Whether the advertisement is false on its face or by necessary implication, it is targeted to create, and does in fact result in, upon information and belief, consumer deception.

12.      Defendant's second falsehood is predicated on third-party standards and certifications.

13.      On its website, Defendant claims that its "products meet *and exceed* to standards of the AFMBA, ANSI and IIS."[1] This create confusion, as Defendant fails to identify which

---

[1] https://www.solveindustrial.com/brands/sst-bearing.  Compare this with the transparency provided by Plaintiff on its website regarding designated components and the PDF certificates tethered to same: https://www.rbcbearings.com/Certifications

products are covered by which standards.  In addition to confusion, defendant misrepresents that its products *"exceed"* the standards.  The lack of any substantiation as to how the products "exceed" the applicable standards is deliberately designed to create confusion and deception in the market.[2]

14.    Both of Defendant's falsehoods cause injury to Plaintiff because the parties compete for customers in a concentrated market for industrial bearings and related fields and Defendant's claims of superiority without substantiation are intended to unfairly and deceptively poach customers from Plaintiff.

15.    Plaintiff has provided written notice to Defendant of its trademark infringements and false advertising, but Defendant has failed to take any corrective action except to add a pre-fix to its infringing activities, which, apart from conceding that Defendant is actually engaged in infringing conduct, does nothing to alleviate its wrongful activity.

16.    By using the RBC Industrial Trademarks and by engaging in false advertising, Defendant's intent has become clear: (1) to cause as much confusion and deception in the industrial market as possible, and thereby (2) unfairly gain an increased market share to deprive Plaintiff of profits.

17.    Defendant's conduct is willful and wanton, which is exemplified by its failure to take corrective action in response to Plaintiff's cease and desist letters.

18.    Defendant's deliberate and continued trademark infringement and false advertising demonstrate conduct that is intentional, misleading, and unfair.

---

[2] https://blog.falltech.com/are-your-products-actually-ansi-compliant-or-just-labeled-ansi

19.     This action seeks to stop Defendant's infringement of RBC Industrial Trademarks and to end the consumer confusion and unfair competition Defendant has created with its false advertisements.

20.     For decades, RBC has worked diligently to establish its brands and solidify its reputation as a reliable manufacturer in the industrial industry.  Defendant should not be permitted to use Plaintiff's trademarks, to profit from Plaintiff's good will and years of hard work, and to unjustly acquire Plaintiff's customers with false claims. Plaintiff seeks compensatory damages, as well as willful (treble) damages, and reasonable attorneys' fees.

## Parties

21.     Plaintiff, RBC, is organized pursuant to the laws of the State of Delaware, and has its principal place of business at 102 Willenbrock Rd, Oxford, CT 06478.  RBC is a wholly owned subsidary of RBC Bearings Incorporated, a publicly traded company listed on the New York Stock Exchange.

22.     Defendant, Solve, is a private corporate entity organized pursuant to the laws of North Carolina, with its principle place of business at 2127 Ayrsley Town Boulevard, Suite 300, Charlotte, NC 28273.

## Jurisdiction and Venue

23.     This case involves trademark infringement and false advertising. The controversy herein arises under the provisions of the Section 43(a) of the Lanham Act, the Connecticut Unfair Trade Practices Act, Conn, Gen. Stat. §§ 42-110a et seq., Connecticut Unfair Sales Practices Act, and Conn. Gen. Stat. §§ 42-115a et seq.

24.     This Court has original jurisdiction pursuant to 15 U.S.C. §1121(a),  28 U.S.C. §1331, and 28 U.S.C. §1338.

25.     This Court has supplemental jurisdiction over the state and common law claims herein pursuant to 28 U.S.C. § 1367(a) because those claims relate to the Lanham Act claim, so as to form part of the same case or controversy under Article III of the United States Constitution.

26.     The Court has personal jurisdiction over Defendant pursuant to Conn. Gen. Stat. §§ 52-59b and 34-243r because this cause of action arises out of the Defendant conducting business in this State and District by sales and extensive distribution networks and contracting to supply goods and services within this State and District.  Among other things, Defendant's website identifies a Connecticut Sales Representative[3] for purchasing Defendant's bearings in Connecticut, together with distributor networks, such as Eisenhaur Industrial Solutions and Luck Industrial Sales, Inc., which also offer Defendant's bearing line for sale in Connecticut.  Solve also uses large distributors, such as Grainger and Zoro, that either have Connecticut locations or offer sales directly to Connecticut purchasers.

27.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this State and District.

## **Background**

28.     Plaintiff is in the business, of, among other things, manufacturing, marketing, selling, and supplying ball-bearing products in interstate commerce.

29.     Plaintiff has been in the business of, among other things, manufacturing, marketing, selling, and supplying ball-bearings products for over 100 years.

30.     Plaintiff is a leader in the field of ball bearings. The recipient of Boeing's 2022 Supplier of the Year award, Plaintiff is "a leading international manufacturer of highly

---

[3] solveindustrial | Find a Sales Rep

engineered precision bearings, components and essential systems for the industrial, defense and aerospace industries."[4]

31.    In 1997, Plaintiff purchased Nice Ball Bearings, Inc which included the Nice Ball Bearing line of products.  A press release posted on Plaintiff's website reads:

> Nice Ball Bearings, Inc. an RBC Bearings company, is celebrating its 100th year in business . . .
>
> In 1902, William Nice, Jr. founded the Pressed Steel Manufacturing Company, which produced and sold ball bearings made from sheet steel on a sub-contract basis. In 1914, the first true manufacturing operations commenced, and the company's name was changed to The Nice Ball Bearing Company. Following WWI, the first company factory was built on a 187-acre section of North Philadelphia originally given to the Nice family by William Penn "for services rendered."
>
> Today, Nice Ball Bearings primarily manufactures ground and semi-ground specialty ball bearings, most of which are custom engineered. Special design configurations and materials are the trademark of the company.
>
> Nice was purchased in 1997 by RBC Bearings, Inc., where it remains today an integral part of RBC's broad portfolio…"

32.    Defendant Solve is a private company.  In 2021, Solve was acquired by Audax Private Equity ("Audax").  As further explained below, Defendant's brand portfolio includes: (1) IPTCI Bearings, (2) MasterDrive Power Transmission Components, (3) P.T. International, (4) TRITAN, (5) LMS Bearings, (6) SPB-USA, (7) SST Bearings and (8) USA Rollers.[5]

33.    Defendant's brands are associated with varying components and machinery.  For example, the TRITAN brand is associated with "Unmounted radial ball bearings, roller bearings, and spherical plain bearings [and] Standard & Corrosion Resistant mounted ball bearings."

---

[4] https://investor.rbcbearings.com/news-releases/news-release-details/rbc-bearings-receives-boeing-2022-supplier-year-award#:~:text=RBC%20Bearings%20Receives%20Boeing%202022,Year%20Award%20%7C%20RBC%20Bearings%20Inc

[5] https://www.solveindustrial.com/brands

34.    On November 19, 2020, a press release posted on Defendant's website stated: "Solve Industrial Motion Group announced today its formation and the uniting of three strong, established businesses in the industrial bearings and power transmission components industry. The brands include P.T. International (PTI) based in North Carolina, IPTCI Bearings headquartered in Minnesota, and LMS Bearings in Colorado . . . Our companies joined through acquisition over the past several years to bring more value to our customers and today we've gone a step further by creating a new business model with Solve and its specialty sub-brands."

35.    On December 15, 2021, Defendant issued a press release which stated, "Solve industrial Motion Group ("Solve") a portfolio company of Audax Private Equity, has acquired Bearings Limited, a leading manufacturer of bearings and power transmission components under the Tritan brand. We are excited to grow our platform of Solve brands."[6]

**RBC Industrial Trademarks**

36.    Plaintiff owns RBC Industrial Trademarks in connection with ball bearing products for equipment relating to construction, mining, material handling, transportation and off-highway robotics and automation, farming machine tools, and semiconductor applications.

37.    Plaintiff and its predecessors—for example, Nice Ball Bearings, Inc.—have been using RBC Industrial Trademarks in connection with the manufacture and sale of distinct and original products in the United States for more than seventy-eight (78) years.

38.    Over the last several decades, RBC Industrial Trademarks have served as a unique identifier to customers of genuine high-quality bearings meeting industry standards

---

[6]    https://www.solveindustrial.com/about-us/news/press-releases/solve-industrial-motion-group-acquired-by-audax-private-equity

manufactured solely by RBC. Each trademark ensures that RBC's customers are getting an original, high quality RBC product.

39.    As a result of Plaintiff's longstanding use of RBC Industrial Trademarks and the high quality of its goods, the RBC Industrial Trademarks have become widely-known and famous throughout the United States, are closely identified with RBC, and represent RBC's substantial, well-earned goodwill.

40.    Since at least 1946, Plaintiff has marketed products bearing RBC Industrial Trademarks for equipment relating to construction, mining, material handling, transportation and off-highway robotics and automation, farming machine tools, and semiconductor applications.[7]

41.    Since at least 1946, Plaintiff has used RBC Industrial Trademarks in interstate commerce in association with its manufacture and sale of equipment relating to construction, mining, material handling, transportation and off-highway robotics and automation, farming machine tools, and semiconductor applications.

42.    Plaintiff's use of RBC Industrial Trademarks in interstate commerce has been continuous since at least 1946.

43.    Plaintiff's ownership of the RBC Industrial Trademarks gives it the exclusive right to use the trademarks in commerce in connection with the goods specified in the certificates of registration under 15 U.S.C. § 1115(b).

44.    The RBC Industrial Trademarks are widely-recognized within the Industrial industry as identifying Plaintiff's products.  The fame and goodwill associated with the RBC Industrial Trademarks are valuable corporate assets for Plaintiff.

---

[7] https://www.rbcbearings.com/Product-Applications#

45.    The RBC Industrial Trademarks have long since acquired secondary meaning, in that they are known throughout the industry as designating products provided exclusively by Plaintiff.

46.    Plaintiff has consistently and continuously used the RBC Industrial Trademarks in its website, newspaper advertisements, social media, catalogs, and specifications.  An example of Plaintiff's use of the RBC Industrial Trademarks to identify its products is found in its catalog attached hereto as **Exhibit G**.

47.    As discussed herein, Plaintiff's RBC Industrial Trademarks are strong and entitled to protection.

48.    RBC also takes steps to enforce its trademark rights, including, without limitation, participating in the Amazon Intellectual Property program, meant to curb infringing activities on the web.  RBC has been active in this program since 2020.  During this time period, RBC has also been active with the United States Customs and Border Protection program meant to address inbound infringing sales in the U.S as well.

49.    In addition, after obtaining registrations of the RBC Industrial Trademarks in September 2017, RBC converted those registrations into decisions of incontestability through ongoing proceedings before the USPTO, which culminated in September 2024.  *See* **Exhibits A-F**.

## Defendant's Use of RBC Industrial Trademarks

50.    Defendant sells power transmission components and industrial-grade bearings under the following brands in its portfolio: IPTCI Bearings, MasterDrive Power Transmission Components, PTI, TRITAN, LMS Bearings, SST Bearings, SPB-USA & USA Rollers.

51.     Defendant sells radial ball bearings under its TRITAN brand illegally using RBC Industrial Trademarks.[8]

52.     Defendant sells radial ball bearings under its SST brand illegally using RBC Industrial Trademarks.[9]

53.     Defendant's SST brand also provides specifications illegally using RBC Industrial Trademarks.

54.     Defendant's illegal use of RBC Industrial Trademarks is knowing and intentional.

55.     Upon information and belief, Defendant has been aware of Plaintiff's RBC Industrial Trademarks since Plaintiff filed them for registration before the USPTO in 2004, trademark applications that ultimately became registrations on September 26, 2017, followed by additional determinations from the USPTO in September 2024 that the RBC Industrial Trademarks were incontestable.  ***See*** **Exhibits A-F.**

56.     Notwithstanding RBC's extensive trademark history before the USPTO, spanning 20 years, and cease and desist letters that RBC sent to Defendant, Defendant's website still shows its current and widespread use of RBC Industrial Trademarks.  And, in response to cease and desist letters that RBC sent to Defendant in 2024, Defendant plainly acknowledged its infringing conduct, decided to keep infringing anyway, and merely offered to change a pre-fix (adding a letter) to its infringing conduct. Believing this would be sufficient, when it is not, Defendant even quipped that RBC was engaged in a "waste of time" attempting to prevent Defendant from engaging in intentional infringing activity.

---

[8] https://www.tritanpt.com/online-catalog/deep-groove/radial-ball/1600-series/
[9] https://sstbearingcorp.com/bearings/standard-radial/
and https://sstbearingcorp.com/pdfs/bearings/006.pdf

57.    Through the illegal use of the RBC Industrial Trademarks, Defendant is selling the very same goods as Plaintiff - - ball bearings.

58.    Through the illegal use of the RBC Industrial Trademarks, Defendant is marketing ball bearings to the very same consumers as Plaintiff.

59.    Defendant's illegal use of RBC Industrial Trademarks mark for advertising, marketing, and identifying its radial ball bearings is likely to, and intended to, cause consumer confusion and deception, by deliberately giving the false impression that the ball bearings are associated with Plaintiff and thereby, feeding off of Plaintiff's goodwill.

60.    Defendant is using trademarks, and permutations of same, which are identical to those owned by Plaintiff (i.e., 1600 Series ®, 1621®, 1630®, 1635®, 1641® and 600 Series®).

61.    Defendant's use of RBC Industrial Trademarks mark is likely to dilute the distinctive quality of the Plaintiff's famous mark.

62.    Defendant intentionally uses RBC Industrial Trademarks to profit from Plaintiff's well-earned fame and goodwill.

63.    Over time, Plaintiff has sent Defendant multiple cease and desist letters.

64.    Plaintiff even sent Defendant cease and desist letters as recently as June 4, 2024 and June 13, 2024.

65.    Despite the notice provided by Plaintiff, Defendant continues to use RBC Industrial Trademarks.  Defendant's intentional disregard for, and illegal conduct in violation of, Plaintiff's registered trademarks is willful, intentional, and deliberate.  RBC therefore seeks a permanent injunction to stop this conduct.

66.    Defendant had also constructive notice of the registration of Plaintiff's RBC Industrial Trademarks pursuant to 15 U.S.C. § 1072, and, on or about September 26, 2017,

Defendant had actual notice of the registration of Plaintiff's RBC Industrial Trademarks.  *See* **Exhibits A-F**.

67.    Notwithstanding constructive and actual notice, Defendant uses RBC Industrial Trademarks, upon information and belief, in association with its radial bearings in Connecticut and throughout the United States.

68.    Defendant's use of Plaintiff's RBC Industrial Trademarks is without consent, sponsorship, or authorization.

<u>**Defendant's False Advertising**</u>

69.    The parties are direct competitors in the radial ball bearing market.

70.    Defendant's advertisements of its SST brand are deceptive and misleading.[10]

71.    Defendant falsely claims that its "manufacturing process" allows it to "delive[r]" high volume parts "*5 times more quickly than others in the industry.*"

72.    Defendant's claim is false since it has no knowledge of Plaintiff's manufacturing processes.

73.    Defendant's claim is also incapable of being proven since Plaintiff's manufacturing processes are protected under state and federal law as trade secrets.

74.    Defendant also falsely and confusingly touts its products as exceeding industry standards.[11]

75.    Specifically, Defendant claims that its "products meet <u>and exceed</u> to standards of the AFMBA, ANSI and IIS."[12]  By not identifying which products are covered by which

---

[10] https://sstbearingcorp.com/

[11] https://www.solveindustrial.com/brands/sst-bearing

[12] https://www.solveindustrial.com/brands/sst-bearing.

standards, Defendant creates confusion and falsely implies that all of its products are covered by the AFMBA, ANSI and IIS standards.  Moreover, defendant's lack of detail and substantiation as to how its products "exceed" the standards is deliberately designed to deceive consumers.

76.    Defendant's false advertisements as to the speed of its manufacturing process and the level at which its products meet industry standards cause injury to Plaintiff because the parties operate in a concentrated market for ball bearings and related fields and Defendant's false statements proclaim its superiority over Plaintiff without substantiation.

77.    Defendant has taken no corrective action to ameliorate the harms complained of herein.

**Materiality – Literal Falsehood – Presumption of Deception and Injury**

78.    By falsely, and without substantiation, advertising that (1) its manufacturing process is five times faster than that of its competitors and (2) its ball bearings exceed third-party certifications, Defendant makes material misrepresentation which intentionally deceive consumers and directly harm competitors, like Plaintiff.

79.    Defendant's misrepresentations are blatantly intended to give it an unfair competitive edge by convincing consumers that its products are superior to others.

80.    The subject advertisements are either false on their face, constituting a literal falsehood, or, alternatively, they imply a false message, thereby rising to the level of a literal falsehood. Whether the advertisements are literally false or false by necessary implication, the damage they cause is the same.  Each false advertisement promotes consumer deception and steals unfairly from Plaintiff's well-earned share of the marketplace.

**Injury**

---

81.    Upon information and belief, Defendant's false advertisements have caused injury to Plaintiff (and continue to do so) in terms of:

a.    *loss of goodwill* by claiming that Defendant's products are superior to Plaintiff's products;

b.    *lost market share* by claiming superior products in the same market wherein Plaintiff operates; and

c.    *lost profits*, by stealing customers from Plaintiff and unfairly profiting from sales that would have gone to Plaintiff had the false representations not been made.

82.    By the conduct described herein, Defendant deliberately and falsely represents itself in the aerospace and related markets, to lure potential customers from competitors, like Plaintiff, and steal profits absent fair competition.

## FEDERAL TRADEMARK INFRINGEMENT

83.    Plaintiff hereby repeats and realleges paragraphs 1-82 of its Complaint as if fully set forth herein.

84.     Plaintiff owns the RBC Industrial Trademarks and is deserving of the goodwill symbolized by these trademarks.

85.    Plaintiff maintains an exclusive right to use the subject trademarks in commerce.

86.    Defendant's unauthorized use of the RBC Industrial Trademarks constitutes a use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's RBC Industrial Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of goods that are highly related, and identical, to the goods provided under Plaintiff's registered trademarks, and that are marketed through the same channels of trade and to the same class of consumers.  Such use of the RBC Industrial Trademarks mark by Defendant is likely to

cause confusion, mistake, or deception as to the source, origin, and authenticity of the goods; and will cause purchasers and potential purchasers to falsely believe that the goods of the Defendant have a sponsorship, approval, status, affiliation, or connection with Plaintiff.

87.    Defendant's use of RBC Industrial Trademarks is likely to cause, and may have caused, confusion in the marketplace.

88.    Defendant's use of RBC Industrial Trademarks, which are virtually identical to Plaintiff's trademarks, to promote and market goods to consumers in the same channel of commerce in which Plaintiff operates, constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

89.    Upon information and belief, the aforementioned acts of Defendant have been and are being committed with the knowledge that such acts are causing confusion, or are likely to cause confusion, or to cause mistake, or to deceive.  Defendant's acts are intentional, willful, and maliciously calculated to cause confusion or mistake, or to deceive.  As such, this is an exceptional case.

90.    Defendant's unlawful conduct proximately caused Plaintiff to suffer irreparable injury, and substantial damages, including, but not limited to, damage to Plaintiff's business reputation and goodwill.  Plaintiff is entitled to recover damages, which include its losses, and any and all profits Defendant may have made as a result of its wrongful conduct under 15 U.S.C. § 1117(a).  Alternatively, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c).  In addition, because Defendant's infringement of Plaintiff's trademarks was willful, the award of actual damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).  Alternatively, the award of statutory damages should be enhanced in accordance with 15 U.S.C. §1117(c).

## COUNT II
## COMMON LAW TRADEMARK INFRINGEMENT

91.     Plaintiff repeats and realleges paragraphs 1-82 of its Complaint as if set forth fully herein.

92.     Defendant has promoted and advertised, and continues to promote and advertise, in print and electronic media, its own radial ball bearings using RBC Industrial Trademarks.  The infringing marks used by Defendant are identical, both visually and phonetically, to Plaintiff's trademarks in violation of Plaintiff's common law rights.  Defendant's sale of goods under Plaintiff's trademarks was, and is, willful and calculated to profit unjustly from Plaintiff's goodwill and business reputation.

93.     Defendant's promotion and sale of its goods under the RBC Industrial Trademarks intentionally and irreparably suggests an association, affiliation, or sponsorship with, or approval by Plaintiff, so as to cause, or likely cause, confusion among consumers, to Defendant's profit and Plaintiff's damage.

94.     Defendant's infringement of Plaintiff's Industrial Trademarks constitutes common law trademark infringement which has irreparably damaged, and will continue to irreparably damage, Plaintiff by tarnishing and siphoning from its goodwill and reputation, and poaching from its actual and potential profits.

95.     Defendant has been unjustly enriched by its intentional, illegal and unjustifiable conduct.

## COUNT III
## VIOLATION OF CONNECTICUT'S  UNFAIR AND TRADE PRACTICES ACT
## CONN. GEN. STAT §§ 42-110 ET SEQ.

96.     Plaintiff repeats and realleges paragraphs 1-95 of its complaint as if set forth fully herein.

97.     Defendant is engaged in trade or commerce in the state of Connecticut within the meaning of Conn. Gen. Stat. §§ 42-110.

98.     The actions described herein, including Defendant's unauthorized use of RBC Industrial Trademarks, constitute unfair and deceptive trade practices which were in and effect commerce, and which offend public policy, and are unethical, unscrupulous, and constitute unfair methods of competition in the conduct of trade and commerce, and have caused confusion or misunderstanding as to the source of products, all in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110.

99.     The statements, actions, and inactions of Defendant violate the prohibition against unfair and deceptive trade practices found in Conn. Gen Stat §§ 42-110 et seq.

100.     As a result of Defendant's unfair and deceptive trade practices, Plaintiff has incurred damages, embarrassment, and injury to its reputation in an amount that cannot presently be ascertained and cannot adequately be compensated by monetary relief alone.

101.     As a result of Defendant's unfair and deceptive trade practices, Plaintiff has suffered an ascertainable loss of revenue.

102.     In accordance with Conn. Gen. Stat. §§ 42-110g(c), a copy of this Complaint is being mailed to the Attorney General and the Commissioner of Consumer Protection for the State of Connecticut.

**COUNT IV**
**VIOLATION OF CONNECTICUT'S UNFAIR SALES PRACTICES ACT**
**CONN. GEN. STAT §§ 42-115E ET SEQ**

103.      Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-102 as if fully alleged herein.

104.     By virtue of the foregoing, including Defendant's unauthorized use of

RBC Industrial Trademarks, Defendant has used unfair methods of competition and unfair acts or deceptive acts or practices in the conduct of a trade or commerce, and has caused confusion or misunderstanding as to the source of the products, all in violation of the Connecticut Unfair Sales Practices Act, Conn. Gen. Stat. §§ 42-115e *et seq.* Unless Defendant's illegal and infringing conduct is enjoined by this Court, Plaintiff will continue to be irreparably injured.

**COUNT V**
**FEDERAL UNFAIR COMPETITION/FALSE ADVERTISING**

107.    Plaintiff repeats and realleges paragraphs 1-106 of its Complaint as if set forth fully herein.

108.  Without authorization or consent, Defendant uses RBC Industrial Trademarks and makes false and/or misleading representations of fact, all of which is likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection, or association of Defendant's products with Plaintiff.

109.  Upon information and belief, Defendant infringes upon the RBC Industrial Trademarks with bad faith and intent to cause confusion, or mistake and/or to deceive purchasers and/or potential purchasers.

110.  If Defendant is not enjoined from committing its wrongful acts of trademark infringement and false advertising, Plaintiff will continue to suffer great and irreparable injury, loss, and damage for which it has no adequate remedy at law.

111.  As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and, as Plaintiff has no adequate remedy at law, Plaintiff is entitled to injunctive relief and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118.

**WHEREFORE**, Plaintiff prays for a Judgment:

**A.    Trademark Infringement, Unfair Competition and Connecticut's Trade Practices Act**

1.      In favor of Plaintiff on all of Plaintiff's claims and awarding Plaintiff monetary damages to compensate for Defendant's wrongful conduct and to account for and pay over to Plaintiff all gains, profits, and advances derived from the goods, services, offering of goods and services, distribution, or advertising of any goods and services in wrongful association with Plaintiff's RBC Industrial Trademarks;

2.      Awarding Plaintiff its costs and attorneys' fees associated with Defendant's violations of the Connecticut Unfair Trade Practices Act;

4.      Awarding Plaintiff such other and further relief as the Court may deem just and proper;

5.      Permanently enjoining Defendant and its agents from infringing Plaintiff's trademarks or any from using any mark confusingly similar thereto;

6.      Awarding Plaintiff judgment for damages resulting from Defendant's violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125[a]) for Federal Unfair Competition, in an amount to be fixed by the Court which, in its discretion, it finds just, including: a) all profits received by Defendant from sales and revenues of any kind as a result of the actions complained of herein; and b) all damages sustained by Plaintiff as a result of Defendant's acts, and that such damages be trebled; and c) that, in light of the deliberate and willful actions of Defendant this action be designated an exceptional case, thereby entitling Plaintiff to an award of all reasonable attorneys' fees, costs, and disbursements incurred, pursuant to 15 U.S.C § 1117; and

**B.    False Advertising**

7.    Holding that Defendant has engaged in false advertising and deceptive trade practices under 15 U.S.C. §§ 1125(a)(1)(A) and (B) and Connecticut Unfair Trade Practices Act.

8.    Permanently enjoining Defendant from the false advertising complained of herein and ordering that Defendant engage in a program of corrective advertising to repair the damage its wrongful conduct caused to Plaintiff's reputation and goodwill including, but not limited to upon further discovery, advertising as follows:

a. That Defendant has no ownership in or rights to use the RBC Industrial Trademarks;

b. That Defendant cannot justify or substantiate its claim that its manufacturing process is 5 times faster than those of its competitors;

c. That Defendant lacked any data whatsoever to make that false claim as to the speed of its manufacturing process compared with those of its competitors;

9.    Ordering that the corrective advertising be published, at a minimum, in those sources where the falsehoods were originally distributed (e.g. Defendant's website); and

10.    Ordering Defendant to file with the Court, and serve on Plaintiff within ten (10) days after issuance of the permanent injunction requested herein, a report, in writing and affirmed under oath, detailing the manner in which Defendant has complied with the permanent injunction;

11.    Ordering Defendant to pay actual, consequential, special, and unjust enrichment/restitutionary damages, lost profits, and other monetary relief in an amount to be proven at trial in accordance with 15 U.S.C. § 1117(a) as related to the false advertising claims;

12.    Ordering Defendant to provide an accounting of all revenues, expenses and income derived by Defendant from its false advertising and infringing conduct described herein; and the entry of an order of disgorgement requiring the delivery of such proceeds to Plaintiff;

13      Ordering Defendant to pay pre-judgment interest;

14      Ordering Defendant to pay an award of treble damages for its willful false

advertising campaign, in accordance with 15 U.S.C. § 1117(a);

15.     Ordering Defendant to pay, in relation to the false advertising claim, the costs and

reasonable attorneys' fees incurred by Plaintiff, in accordance with 15 U.S.C. § 1117(a); and

16.      Awarding Plaintiff monetary damages; and

17.      Awarding Plaintiff costs and fees; and

18.     Awarding Plaintiff punitive or exemplary damages, and

19.     Awarding such other and further relief as the Court deems fair and appropriate.

20.     Plaintiff hereby demands a trial by jury on all issues so triable.


                          Respectfully submitted,


             By:      */s/ Joseph M. Casino*
                      Joseph M. Casino (ct30382)
                      Wiggin and Dana LLP
                      437 Madison Avenue, 35th Floor
                      New York, NY 10022
                      (212) 551-2842
                      jcasino@wiggin.com

                      Matthew C. Brown (ct28331)
                      Wiggin and Dana LLP
                      20 Church Street, 16th Floor
                      Hartford, CT 06103
                      (860) 297-3706
                      mbrown@wiggin.com

                      *Attorneys For Plaintiff Roller Bearing*
                      *Company of America, Inc.*


19124\4\4933-7931-7257.v1